UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HOLLY WIER,                        )
                                   )
          Plaintiff,               )        No. 1:19-CV-07000
                                   )
     v.                            )
                                   )        Judge Edmond E. Chang
UNITED AIRLINES, INC.,             )
                                   )
          Defendant                )

## MEMORANDUM OPINION AND ORDER

Holly Wier brought this suit against her former employer, United Airlines, alleging that she was unlawfully fired. She sues United for failure to accommodate under the Americans with Disabilities Act and the Illinois Human Rights Act, interference under the Family and Medical Leave Act, and discrimination and retaliation under all three (known in employment-law parlance as the ADA, FMLA, and IHRA). R. 1, Compl. United moves for summary judgment on all claims. R. 162, Def.'s Mot. Wier cross-moves for summary judgment on her FMLA interference claim. R. 166, Pl.'s Mot. and Opp. For the reasons discussed below, both motions are denied.

## I. Background

Holly Wier worked at United as a reservations sales and services representative from December 1994 to October 2008; as a senior coordinator for airport operations stations support from November 2011 to April 2012; and as a training scheduler for flight crew operations from April 2012 to October 26, 2017, when United terminated her employment. R. 164-1, DSOF ¶ 2; R. 164-1, Wier Dep. at 21:19–22, 34:5–

1

18; 38:6–40:5. This litigation concerns Wier's use of leave when she was a training scheduler in 2016 and 2017. Compl. ¶ 1.

In January 2016, United's Operations Center Medical Department approved Wier's request for FMLA leave to care for her sick mother. The Operations Department authorized leave to care for a family member up to 26 times per year, and 1 to 2 days per episode between December 2015 and December 2016. R. 168, PSOF ¶ 1; DSOF ¶¶ 11, 13; R. 164-1, Wier Dep., Exh. 3. This FMLA leave is not the subject of this litigation.

On September 9, 2016, Wier faxed United a request for intermittent FMLA leave for her own health condition: "dysthymic disorder with significant dysphoria." R. 170, Def.'s Resp. PSOF ¶ 2; R. 167-5, Pl.'s Resp. DSOF, Exh. 32. The request stated that Wier would have medical appointments "every Thursday at 1:30 pm" and a prescription medication of paroxetine for her treatment. Pl.'s Resp. DSOF, Exh. 32. The request stated that based on her past medical history, she needed intermittent leave for "2–5" episodes per month, and the episodes lasted "1 day or 10 hours." *Id.* The request listed the following work functions that Wier was "unable to perform when incapacitated": "unable to get into work sometimes due to continuous crying. When at work difficult to concentrate, when very dysphoric and crying all the time." *Id.* Wier's paperwork was signed by her clinical psychologist, Dr. Judith Ivins. *Id.* Two days later, Wier faxed United an updated request with handwriting stating "updated on 9-11 with new dates for first page – scheduled appointments. Please use this one." Def.'s Resp. PSOF ¶ 3; Pl.'s Resp. DSOF, Exh. 32.

On September 12, 2016, the Operations Department requested that Wier's "health care provider submit additional medical facts related to the condition for which you are requesting Family Leave to support a possible 50 days [sic] per month of (2–5 episodes per month, 1 day or 10 hours per episode) … We are unable to process your request without this information. Please have your health care provider initial and date any information added to your packet." Def.'s Resp. PSOF ¶ 4; Pl.'s Resp. DSOF, Exh. 32. The next day, Wier submitted the same paperwork that she had already provided, along with an additional note from her primary care provider, Dr. Gephart, stating "no further medical data. Report is accurate." Def.'s Resp. PSOF ¶ 4; R. 167-6, Pl.'s Resp. DSOF, Exh. 52.

On September 19, 2016, the Operations Department again found that the certification was incomplete, and requested that Wier's "health care provider submit additional medical facts related to the condition for which you are requesting Family Leave to support a possible 50 hours per month off (2–5 episodes per month, 1 day or 10 hours per episode)." Def.'s Resp. PSOF ¶ 5; R. 167-6 Pl.'s Resp. DSOF, Exh. 31. Wier called the Operations Department for clarification about the additional information requested. The Operations Department informed Wier that United needed information relating to her job functions. Def.'s Resp. PSOF ¶ 5; R. 167-1, Wier. Dep. at 70:3–4, 107:13–108:19, 194:9–17.

On October 9, 2016, Wier submitted an updated leave request that changed the number of episodes to 2–4 per month and added a section that described the activities that Wier could not perform at work: "Can not talk on phone[.] Can not talk

in person[.] Lose focus [and] attend to work[.] Overlay with dysphoria—decision making is impaired [and] short term memory is impaired[.] At this point, these symptoms are not present all the time, but they can be episodic and severe enough to prevent working that day." Def.'s Resp. PSOF ¶ 6; R. 167-5, Pl.'s Resp. DSOF, Exh. 30. The changes were signed by Dr. Ivins. *Id.* According to Wier, she wrote this additional section on the form herself, in the presence of Dr. Ivins, during a counseling session.[1] Def.'s Resp. PSOF ¶ 6; R. 167-1, Wier Dep. at 108:20-109:9, 112:22-113:25. By October 16, 2016, the Operations Department approved Wier's FMLA request. Def.'s Resp. PSOF ¶ 6; R. 167-5, Pl.'s Resp. DSOF, Exh. 13. The parties agree that Wier's intermittent leave was approved for the period of August 15, 2016, to August 15, 2017. *Id.*[2]

On July 24, 2017, Wier submitted a request for an additional six months of intermittent FMLA leave for the same condition (dysthymic disorder with significant dysphoria), this time from August 15, 2017, to February 15, 2018. Def.'s Resp. PSOF ¶ 9; R. 167-5, Pl.'s Resp. DSOF, Exh. 34. The parties agree that Wier's request was an exact duplicate of her prior October 9, 2016 request, except that the date next to Dr. Ivins's signature was whited-out and changed to July 21, 2017. R. 167, Pl's Resp. DSOF ¶ 27. The Operations Department approved the request on July 28, 2017. Def.'s Resp. PSOF ¶ 9; R. 167-5, Pl.'s Resp. DSOF, Exh. 35.

---

[1]United does not dispute this fact now in this litigation, but contends that the company was not aware of this fact at the time that Wier's employment was terminated. Def.'s Resp. PSOF ¶ 6.

[2]It is worth noting that neither party provides documentation on the approval apart from an email stating that "Holly's FMLA was approved. She wants to use it for the one occasion she had back in SEP." Def.'s Resp. PSOF ¶ 6; R. 167-5, Pl.'s Resp. DSOF, Exh. 13.

In around August 2017, Janice Nelson, an administrative supervisor responsible for employee scheduling and tracking employee dependability and FMLA use, reviewed Wier's FMLA leave.[3] Pl.'s Resp. DSOF ¶ 17; Def's Resp. PSOF ¶ 11; R. 167-3, Nelson Dep. at 29:20–30:16, 103:23–105:6. Nelson found that United approved Weir's requests to take two consecutive FMLA leave days on two separate occasions, which she believed was "beyond the parameters" of Wier's approved leave. Pl.'s Resp. DSOF ¶¶ 17–18; Def.'s Resp. PSOF ¶ 11; Nelson Dep. at 106:5–107:15, 114:15–25.[4] Nelson also reviewed Wier's Facebook page for posts on days Wier took FMLA leave and found that some posts "seemed very upbeat … for someone who was taking FML for emotional—you know, for depression." Def.'s Resp. PSOF ¶ 14; Nelson Dep. at 117:5–118:17, 120:20–121:4; R. 167-7, Pl.'s Resp. DSOF, Exh. 71.

Nelson then emailed Carlos Rivera Torres, Alyssa Sandoval, Becky Hennig, and Laurie Ledonne stating that:

> We have reason to believe that one of our employees, Holly … may be abusing her FMLA. I have Facebook postings and information from her past supervisor that seem inconsistent with her FMLA usage. We would like to have her recertify using United's vetted doctors and I was wondering how we would go about starting this process?

Def.'s Resp. PSOF ¶ 13; R. 167-5, Pl.'s Resp. DSOF, Exh. 21. Nelson also created a timeline of Wier's FMLA usage, comparing her FMLA leave days to her scheduled

---

[3]The parties dispute the characterization of why Nelson reviewed Wier's FMLA use: Wier says that United "looked into Smith and Reyes's history of approving Plaintiff's use of FMLA leave," Def.'s Resp. PSOF ¶ 11, whereas United claims that it was doing an audit of all the employees supervised by Reyes, including Wier. *Id.*

[4]The parties dispute whether Wier's approved FMLA leave for "2 to 4 episodes per month with a length of episode of 1 day or 10 hours" permitted Wier to take consecutive leave days. Def.'s Resp. PSOF ¶ 12.

days off, scheduled training days, and her husband's scheduled days off (he also worked at United).[5] Pl.'s Resp. DSOF ¶¶ 19, 20; R. 167-7, Pl.'s Resp. DSOF, Exh. 79; R. 167-5, Pl.'s Resp. DSOF, Exh. 26.

On September 25, 2017, Nelson emailed Rivera Torres, McNabb, Sandoval, and Ledonne to follow up on "verify[ing] Holly's FMLA certification documentation." Def's Resp. PSOF ¶ 20; R. 167-6, Pl.'s Resp. DSOF, Exh. 39. Rivera Torres, an HR manager at United, testified that around this time he contacted a nurse in the medical department, whom he believes was Cheryl Manikis, who alerted him to the possibility that the forms were "fraudulent" because they were identical except for the whited-out date change. Def.'s Resp. PSOF ¶ 21; R. 167-1, Rivera Torres Dep. Tr. at 183:6–11, 184:2–7. Manikis testified that if she had suspected fraud at the time of Wier's FMLA leave request, she would not have approved it, and she would have made a note of her suspicions in Wier's chart notes. Def.'s Resp. PSOF ¶ 21; R. 167-1, Manikis Dep. Tr. at 141:13–143:2, 171:1–13, 184:15–185:1). Rivera Torres then looked up Dr. Ivins online and found that she had a house address listed, and not a clinic or facility, so he decided to verify whether Ivins was a "legitimate health care provider." Def.'s Resp. PSOF ¶ 22; Rivera Torres Dep. at 185:16–187:20. Rivera Torres checked an online database and had another nurse in the medical department, Marilyn Kapuscik, check a separate database: both found that Dr. Ivins's medical license expired. Def.'s Resp. *Id.* United then requested that Wier obtain proof from Dr. Ivins that she had a "current and valid medical license." Def.'s Resp. PSOF ¶ 22;

---

[5] Wier states the timeline is not entirely accurate because her husband picked up overtime on some days that he was scheduled off; United disputes this. Def.'s Resp. PSOF ¶ 16.

R. 167-5, Pl.'s Resp. DSOF, Exh. 36. Separately, Rivera Torres called Dr. Ivins, who confirmed that she had signed Wier's FMLA form. Def.'s Resp. PSOF ¶ 24; Rivera Torres Dep. Tr. 186:17-187:2; 189:12-18. Wier alleges, and United disputes, that Rivera Torres also asked Dr. Ivins for information about Wier's diagnosis and her progress in therapy, but did not ask for information about Dr. Ivins's Illinois license, or the white out on the FMLA form.[6] R. 167-3, Ivins Dep. 52:8–54:15, 91:17–92:14; R. 167-1, Ivins Decl. ¶ 8.

Separately, Wier requested sick leave from October 9 to October 13, 2017— Wier alleges for pharyngitis, though United disputes that this was the reason for her leave request. Def.'s Resp. PSOF ¶ 27; R. 167-7. Pl.'s Resp. DSOF, Exh. 61. On October 9, Nelson emailed McNabb, Wier's supervisor, to question the validity of the leave:

> Soooooo…… Holly called in sick today??? Did she try to use FMLA? Too bad we didn't document those two occurrences on January 1 and 2 and Feb 28/March 1 when she called in on the doubles. This latest would have put her at a written warning. We could have given her both the verbal and written at one time like we did to [another United employee]. I have lost all respect for her.

Def.'s Resp. PSOF ¶ 28; Pl.'s Resp. DSOF, Exh. 61. On October 11, 2017, Ledonne emailed McNabb, Nelson, and Sandoval, also questioning the validity of the recent leave:

> Should we reach out to Holly to let her know that because she has called off sick 3+ days we will require a doctor's note saying that she was under medical care and a return to work note? I think, as does Rick [McNabb] since we had a chance to meet on a different issue, that this is a stall tactic on her part because of the requirement to validate her FML. However, I think she needs to be made

---

[6] United disputes that Rivera Torres asked about Wier's diagnosis, arguing that Ivins's deposition and declaration "do not establish the contents of any conversation with Rivera Torres in October 2017." Def.'s Resp. PSOF ¶ 24.

aware that we are going to hold her accountable to these recent call offs as well to prove the legitimacy. What are your thoughts?

Def.'s Resp. PSOF ¶ 30; R. 167-7, Pl.'s Resp. DSOF, Exh. 63. But the Operations Department found that Wier's absence from October 9 to October 13, 2017, was "supported by medical documentation" (the finding was made on October 13). Def.'s Resp. PSOF ¶ 35; R. 167-7, Pl.'s Resp. DSOF, Exh. 83. Later that week, however, Rivera Torres asked the Operations Department nurses to contact Wier's doctor to verify Wier's sick leave from October 9 to 13 "since she seems to have provided false info before." Def.'s Resp. PSOF ¶ 39; R. 167-6, Pl.'s Resp. DSOF, Exh. 42.[7] The Operations Department confirmed that the dates of absence were supported based on a call with "Nancy" (who Wier alleges was a representative from Dr. Gephart's office, though United disputes this). *Id.*

Also on October 13, 2017, Wier alleges that she spoke with Dr. Ivins, who told Wier that Ivins did not know that her (Ivins') license had lapsed until United alerted her to it, because she was dealing with the death of her husband and all three of her siblings (all in a six-month period), her own open-heart surgery, and also moving her residence. Def.'s Resp. PSOF ¶ 33; Ivins Dep. at 78:17-81:6, 83:6-10. That same day,

---

[7] United objects to Wier's reliance on the chart notes for failure to authenticate the evidence. Def.'s Resp. ¶ 36; R. 69 Def.'s Opp. and Reply at 4. It is true that the Court may only consider evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Although Wier has not fully authenticated the evidence at this stage (and it would have been easy to do so with an Evidence Rule 902(11) certificate), Manikis testified about the chart notes in her deposition, Manikis Dep. at 51:15–23, and Wier indeed received the chart notes *from United* in discovery. So the chart notes likely could be presented in an authenticated, admissible form at trial and qualify for consideration at this summary judgment stage.

Manikis emailed Rivera Torres and Kapuscik, informing them of her call with Wier and Wier's explanation of Dr. Ivins' license status:

> FYI: This employee [Wier] called...today and disclosed that her "counselor" did not renew her license to practice. The employee also stated that she will continue to see this counselor "because she has been my counselor for 20 years." States her md is aware that she is seeing this counselor. The employee asked if her doctor Gerphert? Could complete the FML Cert and stated "Can I write in the information like I did with the other FMLA form?" Advised that page 2 and 3 is only to be completed by the MD.

Def.'s Resp. PSOF ¶ 34; Pl.'s Resp. DSOF, Exh. 40. McNabb then emailed Nelson, stating "check your e-mails...there's new news," though McNabb testified that he could not say what that news referred to without revealing privileged communications. Def.'s Resp. PSOF ¶ 37; R. 177, Exh. 64; McNabb Dep. at 159:20–160:20.

On October 17, 2017, Nelson, McNabb, and Ledonne met with Wier; Nelson took handwritten notes at the meeting. Def.'s Resp. PSOF ¶ 40; R. 173-1, Pl.'s Resp. DSOF, Exh. 75. During this meeting, the "three big points of conversation" were (1) Wier's alleged pattern of FMLA use near holidays, scheduled time off, training days, and her husband's time off; (2) Dr. Ivins's expired license; and (3) Wier's completion of the FMLA forms. R. 167-4, Exh. L, Ledonne Dep. 154:3–158:2. During the meeting, Wier stated that her coworkers were being "standoffish" towards her, and Ledonne responded that it may be because coworkers had to cover her shifts when she took FMLA leave. Def.'s Resp. PSOF ¶ 41; Nelson Dep. at 229:18–230:2; Pl.'s Resp. DSOF, Exh. 75. Ledonne or McNabb told Wier that she could alleviate coworker tensions by doing shift trades with advance planning, but Wier replied that "with FMLA it's not ahead of time." Def.'s Resp. PSOF ¶ 41; Nelson Dep. at 235:5–25; Pl.'s Resp. DSOF,

Exh. 75. McNabb explained that there were "concerns" about Wier's "dependability" and the "perception" of her FMLA leave, and that "perception is reality." Def.'s Resp. PSOF ¶ 46; Wier Decl. ¶ 17.[8] When asked about Dr. Ivins's license, Wier answered in the meeting that she did not know that the license was expired when she submitted her FMLA certification. Def.'s Resp. PSOF ¶ 43; Wier Decl. ¶ 14. She also explained that she had been seeing Dr. Ivins for 20 years. Def.'s Resp. PSOF ¶ 43; Ledonne Dep. at 157:19–23. Ledonne questioned whether Wier "had no idea that she was unlicensed" and asked "[s]hould UAL pursue criminal charges?" against Dr. Ivins. Def.'s Resp. PSOF ¶ 43; Nelson Dep. at 225:11–21. Wier also stated that she filled out some of the information on the FMLA certification herself, though no one consulted the actual forms during the meeting. [9] Pl.'s Resp. DSOF ¶ 44; Def.'s Resp. PSOF ¶ 44;

---

[8]United objects to this part of Wier's declaration for containing inadmissible hearsay. Def.'s Opp. and Reply at 3. But because the cited portion comprises statements made by United employees with the authority to speak, the Evidence Rule 801(d)(2) exception for party admissions applies. Also, Nelson's meeting notes are consistent with these statements, R. 167-7, Exh. 75, and Nelson also testified about some of these statements at her deposition, Nelson Dep. at 221:11–222:24, 229:22–230:11, so there is no foundation problem. Thus, the statements must be considered as viable evidence at this stage.

Separately, United challenges Wier's declaration for containing information not previously disclosed during her deposition. Def.'s Opp. and Reply at 4. In general, a party "may not create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition … in the absence of newly-discovered evidence." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 688 n. 5 (7th Cir. 2008) (cleaned up). But a party opposing summary judgment "may attempt to clarify or augment (but not contradict) prior deposition testimony through affidavits." *Summons v. Chicago Bd. of Educ.*, 289 F.3d 488, 492 (7th Cir. 2002) (cleaned up). Because United does not identify contradicting facts (other than Wier's general response to United's blanket question during her deposition of whether she had anything further to add), Wier's averments in the declaration may be considered.

[9]The parties dispute the characterization of what Wier did or did not say about her writing on the forms in this meeting: Wier contends that she "explained that she filled out some of the information and Dr. Ivins filled out some of the information, citing Wier Decl. ¶ 16, whereas United states that Wier "admitted that she completed the healthcare provider's section of the FML certification, and her unlicensed provider signed the certification," Pl.'s Resp. DSOF ¶ 44; Ledonne Dep. at 203:2–11.

Wier, Decl. ¶ 16. Wier twice asked if she needed a lawyer. Def.'s Resp. PSOF ¶ 46; Wier Decl. ¶ 17.

On October 18, 2017, Ledonne wrote an "Investigation Summary Report" about Wier's "misuse of FMLA time, dependability." PSOF ¶ 49; R. 167-5, Pl.'s Resp. DSOF, Exh. 24; Ledonne Dep. at 204:2–11. Ledonne described the scope of the investigation: "[r]eview of Holly's call offs for sick/FMLA are often in conjunction with beginning or end of vacation requests/RDO, during training sessions and when partner Doug Wier has scheduled days off." *Id.* Under interviews, Ledonne wrote that Wier "stated that she helped fill out a section of her own FMLA paperwork as her counselor wasn't sure what needed to be documented on the FMLA, and was confused by the process" and that Wier did not "know that her counselor was no longer licensed" and "believes that at the time the paperwork was signed that she was still licensed." *Id.* Ledonne also wrote that Wier "did not speak to the pattern of absences in regard to missing training, her scheduled time off or Doug's time off. She stated that she can't control when she will be overcome with grief (mother passed) and unable to function at work." *Id.* Under summary, Ledonne wrote that the Operations Department "questions the validity of the paperwork as it appears to be copied from a previous year with the dates whited-out and adjusted. The Operations Department shows that the therapist currently does not carry a professional, medical license." *Id.*

Wier's medical-chart notes show that on October 23, 2017, the Operations Department called Dr. Gephart's office; the office confirmed that Dr. Gephart had completed Wier's new FML request, which had been submitted a week earlier on October

16.[10] Def.'s Resp. PSOF ¶¶ 50, 51; Pl.'s Resp. DSOF, Exh. 42; R. 167-6, Pl.'s Resp. DSOF, Exh. 41.

Three days later, McNabb and Ledonne met with Wier and fired her. Def.'s Resp. PSOF ¶ 52. At this meeting, Wier received a termination letter dated October 24, 2017, stating that "[a]n investigation was triggered when it became apparent to leadership that your FML absences had a pattern in conjunction with RDOs, holidays, your fiancé's days off schedule, and other noticeable events or occasions." *Id.*; Pl.'s Resp. DSOF, Exh. 38. Once the Operations Department reviewed her family medical leave, "it was discovered that [Wier's] 2016 and 2017 FMLA claims were in fact invalid due to paperwork being signed by an unlicensed medical counselor/ professional. It was further revealed and substantiated by [Wier] in two separate conversations to an [Operations Department] representative, HR and NOC leaders that the paperwork was only partially completed by this person, and that [Wier] admittedly committed fraud when [Wier] completed the FMLA paperwork." *Id.* The letter also asserted that it "seemed unlikely" that Wier was unaware Dr. Ivins was unlicensed, and Wier's "supposed lack of awareness does not negate the fact that [Wier] fraudulently completed" the paperwork. *Id.* "There is also still concern as to why 2016 paperwork is completely identical to 2017 paperwork with the exception of the date which has the appearance of being whited-out and adjusted." *Id.* In conclusion, the letter explained that Wier was terminated because her actions violated two of

---

[10]United does not dispute this fact but does object that Wier failed to cite evidence authenticating the medical-chart notes. Def.'s Resp. PSOF ¶¶ 50, 51. This argument was rejected for the reasons explained in an earlier footnote. *See supra*, n. 7.

United's "Working Together Guidelines": "be truthful in all communications" and do "not engage in any activity in violation of local, state or federal laws." *Id.*

In November 2017, Wier requested a copy of her personnel file, and Ledonne asked McNabb for "any verbal warnings, written, term warnings etc" because Wier was "[a]pparently … trying to see if she has a legal case for wrongful termination." McNabb responded that there were no performance-related warnings:

> I have nothing that I can find relative to any warnings given to Holly. All in all, she was a decent employee who stayed off the radar for the most part. I have nothing that would lead anyone to believe that she was a bad performing employee, which wasn't why she was terminated. In regards to why she was terminated, as you know, this all unfolded when we believed that there could be "trends" in her FMLA usage. It evolved into the end result.

Def.'s Resp. PSOF ¶ 55; R. 167-7, Pl.'s Resp. DSOF, Exh. 69.

## II. Analysis

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment

has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

## A. FMLA Interference

In deciding cross-motions for summary judgment, the Court views the facts in the light most favorable to the respective non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). So, when the Court evaluates United's summary judgment motion, Wier gets the benefit of reasonable inferences; conversely, when evaluating Wier's motion, the Court gives United the benefit of the doubt.

Generally speaking, the Family and Medical Leave Act grants employees up to 12 weeks of leave in a year to deal with their own or their family members' medical or caregiving needs, without fear of losing their job. 29 U.S.C. §§ 2612, 2614; 29 C.F.R. § 825.220(a). The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" under the statute. 29 U.S.C. § 2615; *see also Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 816 (7th Cir. 2015). As the language of the statute makes clear, interference is not limited just to the outright denial of leave. "Interference also encompasses using the taking of FMLA leave as a negative factor in employment actions and

14

discouraging an employee from using such leave." *Preddie*, 799 F.3d at 818 (cleaned up). For example, if an employee is told explicitly that she "can't take off" because she has used too much leave—even though she in fact has FMLA leave remaining—and there is evidence that she in fact did not take leave because of this discouragement, she may be able to show interference, even though she was not explicitly denied leave. *Id.*

To succeed on a claim for FMLA interference, the employee must show the following: (1) the employee was eligible for FMLA protection; (2) the employer was covered by the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee provided sufficient notice of his intent to take FMLA leave; and (5) the employer denied FMLA benefits to which the employee was entitled. *Pagel v. TIN, Inc.*, 695 F.3d 622, 627 (7th Cir. 2012). On top of all those elements, the employee also must show that the FMLA violation caused the employee actual prejudice (that is, harm). *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002). Neither party disputes that the first, second, and fourth elements are satisfied here.

Viewing the facts in the light most favorable to Wier, United has failed to establish that there is no genuine dispute that Wier was not entitled to FMLA leave and that United did not deny FMLA benefits that she was entitled to. United argues that it never denied Wier of FMLA benefits and that the company legitimately investigated her FMLA requests and ultimately fired Wier for fraudulent use of FMLA leave. R. 163, Def.'s Mem. at 14–15. But even if United granted all of Wier's leave requests, firing an employee to prevent her from validly exercising FMLA rights is a

form of FMLA interference. *See Goelzer v. Sheboygan Cnty., Wis.*, 604 F.3d 987, 993 (7th Cir. 2010); *Simpson v. Office of Chief Judge of Cir. Ct. of Will Cnty.*, 559 F.3d 706, 712 (7th Cir. 2009). Wier has averred that she completed her leave forms in good faith under the supervision of her psychologist and her primary care doctor. PSOF ¶¶ 4, 14. She also offers evidence that as soon as United alerted her to Dr. Ivins's license expiration—which Wier disclaims prior knowledge of—Dr. Gephart provided additional documentation of Wier's need for intermittent FMLA leave, and United certified it the day before making the decision to fire her.[11] PSOF ¶¶ 50, 51. Wier argues that United was "searching for a reason" to fire her because of her use of FMLA leave by: questioning the pattern of her FMLA use and reviewing her Facebook posts, accusing Wier of committing fraud by helping Dr. Ivins fill out the parts of her FMLA paperwork related to her job functions at United and submitting the same paperwork two years in a row, and investigating Dr. Ivins's license status. *See* Pl.'s Mot. and Opp. at 13. Wier also alleges that in the October 17 meeting with HR and her supervisor, when Wier complained that her colleagues were being "standoffish" towards her, United expressed concern about her FMLA use and its effect on Wier's

---

[11]Wier further argues that Dr. Ivins, even unlicensed, is a "covered healthcare provider under Aetna's group medical plan for [United's] employees for the years 2016 and 2017." PSOF ¶ 73; R. 167-2, Pl.'s Resp. DSOF, Exh. H. United disputes this because Wier has not authenticated the cited exhibit. Def.'s Resp. PSOF ¶ 73. But the circumstances provide sufficient authentication: the subpoena form attached to Exhibit H requested that Aetna "download of your dynamic electronic provider directory…of health care providers, including mental health care providers, in the State of Illinois covered by your group plan for United Airlines, Inc. employees, from 2016-2017." The apparent response to the subpoena is sufficient at this stage to show that the evidence would be admissible. *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 902(11). So the Court will consider the evidence in evaluating the cross-motions for summary judgment.

colleagues, who had to work mandatory overtime to cover her leave, suggesting that she should plan her FMLA leave ahead of time to minimize its impacts on her colleagues. PSOF ¶ 41. In that meeting, United also suggested that it was considering criminal action against Wier's psychologist that she had been working with for over 20 years. *Id.* ¶ 43. Despite the new FMLA request form that Wier had provided with Dr. Gephart's signature, and despite United's confirmation with her primary care provider that the paperwork had been filled out by her doctor, United fired Wier after the October 17 meeting. *Id.* ¶¶ 50–52. A reasonable juror could find on these facts that Wier was entitled to intermittent FMLA leave, and United interfered with Wier's right to FMLA leave by firing her for taking legitimate FMLA leave.

Viewing the facts in the light most favorable to United, however, Wier has likewise not established that there is no genuine dispute of material facts that she was entitled to FMLA leave and United denied her benefits she was entitled to. Although Wier alleges that United improperly scrutinized her use of FMLA leave, employers are entitled to investigate and terminate employees when they have an honest suspicion of abuse of FMLA leave. *Juday v. FCA US LLC*, 57 F.4th 591, 595–96 (7th Cir. 2023). United alleges that it had reasonable grounds for suspicion because Wier's pattern of using FMLA leave near scheduled days off, training days, and days her husband was scheduled off, DSOF ¶¶ 19, 20, together with the exact copy of her 2016 and 2017 FMLA request forms (except for the whited-out date change), *id.* ¶ 27, Wier's completion of forms that were supposed to be filled out by a medical provider, *id.*, and Dr. Ivins's completion of the forms when she was unlicensed, *id.* ¶¶ 28, 29,

all led United to honestly believe (or so a jury could reasonably find) that Wier mis-

used FMLA leave and violated United's Working Together Guidelines. United cites

cases where employees changed the dates of leave or their medical diagnosis without

their doctors' knowledge, *see, e.g. Smith v. Hope School*, 560 F.3d 694, 700–01 (7th

Cir. 2009), and cases where employers' investigations showed definitively that em-

ployees did not need or use FMLA leave for their stated reasons, ***see, e.g. Vail v.***

***Raybestos Prods. Co.***, 533 F.3d 904, 909–10 (7th Cir. 2008). Although Wier's behavior

arguably does not go so far—and United is therefore not entitled to summary judg-

ment on the interference claim—a reasonable juror could find under these facts that

Wier was not entitled to FMLA leave and thus United did not deny Wier the benefits

that she was entitled to. The Court also briefly notes that Wier's claim that she is

entitled to summary judgment because her termination letter stated that her prior

use of FMLA leave was "invalid," Pl.'s Mot. and Opp. at 16, does not alone amount to

FMLA interference on United's part, because Wier actually took that leave. *See Rags-*

*dale*, 535 U.S. at 89 (explaining that the FMLA only provides relief if the employee

"has been prejudiced" by a violation); *Simon v. Coop. Educ. Serv. Agency #5*, 46 F.4th

602, 611 (7th Cir. 2022). (explaining that prejudice is a "requirement to obtain relief

under the FMLA" and "[p]rejudice means harm resulting from the FMLA violation"

(cleaned up)).

Because neither party has shown that there is no genuine dispute of material

facts as to Wier's entitlement to FMLA leave and United's denial of that leave, both

motions for summary judgment on the FMLA interference claim are denied. This is a very close factual determination that is for the jury to make—not this Court.

## B. FMLA Retaliation/Discrimination

The FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). Employers are prohibited from "retaliating against an employee that exercises or attempts to exercise FMLA rights." *Pagel* , 695 F.3d at 631 (citing 29 U.S.C. § 2615(a)(2)). To win on a retaliation claim under the FMLA, the employee must show that "(1) the employee engaged in statutorily protected activity; (2) the employer took adverse action against the employee; and (3) the protected activity caused the adverse action." *Freelain v. Vill. of Oak Park*, 888 F.3d 895, 901 (7th Cir. 2018) (cleaned up). Adverse actions are, relatively speaking, broadly defined for retaliation purposes: "Materially adverse actions are not limited to employment-related activities but include any actions that would dissuade a reasonable employee from exercising his rights under the FMLA." *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 979 (7th Cir. 2008) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)). The correct legal standard is whether the evidence, examined as a whole, would permit a reasonable factfinder to conclude that the plaintiff's protected activity caused the discharge or adverse action. *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 764 (7th Cir. 2016).

The FMLA retaliation claim requires proof of discriminatory intent, meaning "evidence that the employer was acting under a prohibited animus." *Juday*, 57 F.4th

19

at 596 (cleaned up). This intent may be established under either the direct or the indirect method of proof. *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 828 (7th Cir. 2012).[12] Under the direct method, the plaintiff presents evidence that the employer "intended to punish [the employee] for requesting or taking FMLA leave." *Id.* Alternatively, the plaintiff can "try to prove retaliatory intent indirectly by showing that [he] was performing [his] job duties satisfactorily but was treated differently from similarly situated employees who did not request FMLA leave." *Id.* The plaintiff need not prove that retaliation or discrimination was the only reason for the termination; rather, she may establish a claim by "showing that the protected conduct was a substantial or motivating factor in the employer's decision." *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 741–42 (7th Cir. 2008) (cleaned up).

There is a genuine dispute of material fact whether United unlawfully fired Wier because of her protected FMLA activity. As discussed in analyzing the FMLA interference claim, Wier has presented evidence that United probed the pattern of Wier's FMLA use, expressed concern about the impact of her FMLA leave on her colleagues and suggested that she should plan ahead when taking FMLA leave to prevent her colleagues' "standoffish" behavior toward her for taking FMLA leave. Wier has also presented evidence that United repeatedly questioned the legitimacy of Wier's FMLA leave requests, even when her psychologist and primary care provider both confirmed that they were aware of Wier's medical condition and her FMLA leave

---

[12]The Court notes that, consistent with Seventh Circuit precedent, direct and indirect evidence are not subject to different legal standards. *Ortiz*, 834 F.3d at 765; *see Huff v. SOS Children's Villages, Illinois*, 2021 WL 1172655, at *8 (N.D. Ill. Mar. 29, 2021).

requests. Although United has presented some evidence that it had an honest suspicion that Wier committed FMLA fraud and legitimately fired her for that reason as discussed above, viewing the facts in the light most favorable to Wier, there is a genuine dispute of material facts about United's reasons for firing Wier. From Wier's evidence, a reasonable juror could find that United's stated reason for firing Wier was a pretext, given that: United expressed concern about Wier's use of leave and its impact on her colleagues; United terminated Wier's employment shortly after she provided a renewed FMLA leave request from Dr. Gephart; and, the form was consistent with the prior FMLA requests that she had submitted and that had been certified by the Operations Department. Finally, although United might successfully convince a juror that its concerns about Wier's Facebook posts on leave days, the timing of her leave requests, her copied requests between 2016 and 2017, and Dr. Ivins's licensing issues were all legitimate and non-discriminatory reasons for terminating Wier, a reasonable juror might also find that Wier's use of FMLA leave was a substantial factor in United's decision to terminate her. United's challenge to the FMLA retaliation claim is thus rejected.

## C. Failure to Accommodate

Under the ADA, "no covered entity shall discriminate against a qualified individual on the basis of disability," which includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual … unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(a),

(b)(5)(A). A claim for failure to accommodate under the ADA and the IHRA requires proof that: "(1) plaintiff was a qualified individual with a disability, (2) defendant was aware of his disability; and (3) defendant failed to accommodate his disability reasonably." *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019); *Bruno v. Wells-Armstrong*, 93 F.4th 1049, 1056 (7th Cir. 2024) (holding that a plaintiff's IHRA claims, including for failure to reasonably accommodate, "rise or fall with his ADA claims"). A claim for failure to reasonably accommodate is a separate claim from an ADA discrimination or retaliation claim. *Scheidler*, 914 F.3d at 541.

Neither party disputes that Wier is a qualified individual, meaning that she is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). So the Court assumes that Wier is a qualified individual. United does argue, however, that no decisionmakers were aware of Wier's disability. R. 169, Def.'s Opp. and Reply at 14. United argues that because neither Ledonne nor McNabb saw Wier's FMLA certification forms explaining her mental health condition (and Wier does not dispute this fact), they were not aware of her disability. *Id*.; Pl.'s Resp. DSOF ¶¶ 69–70. Wier responds that as early as December 2016, McNabb was aware of her disability because he sent an email describing her FMLA leave "to cope with the loss" of her mother, meaning that McNabb knew Wier's leave was for her own mental health condition and not to care for her mother. Def.'s Resp. PSOF ¶ 8; R. 167-6, Pl.'s Resp. DSOF, Exh. 56. Wier further avers that in her October 17 meeting with McNabb, Nelson, and Ledonne, Wier outright said that she was going to therapy.

Def.'s Resp. PSOF ¶ 42; Wier Decl. ¶ 11.[13] Viewing the facts in the light most favorable to Weir, United has not met its burden of showing there is no genuine dispute about United's knowledge of Wier's disability at the time that she was fired.

On whether United failed to accommodate Weir for her disability, United argues that a request for FMLA leave is not, as a matter of law, a request for a reasonable accommodation. Def.'s Mem. at 7–8. Alternatively, United argues that it did accommodate Wier by approving every request that she made for intermittent FMLA leave. *Id.* at 7. In *Severson v. Heartland Woodcraft, Inc.*, the Seventh Circuit held that a "long-term leave of absence cannot be a reasonable accommodation," but held that its precedent "leaves open the possibility that a brief period of leave to deal with a medical condition could be a reasonable accommodation *in some circumstances.* … Intermittent time off or a short leave of absence—say, a couple of days or even a couple of weeks—may, in appropriate circumstances, be analogous to a part-time or modified work schedule, two of the examples listed in § 12111(9)." 872 F.3d 476, 479, 481 (7th Cir. 2017) (cleaned up) (emphasis added).[14] Whether an employee's request

---

[13]United disputes this fact, contending that Wier's declaration is inadmissible evidence because it contradicts prior sworn testimony. Def.'s Resp. PSOF ¶ 42. In an earlier footnote, the Court rejected this argument (because there is no contradiction of prior testimony, only amplification) and will consider this evidence in deciding the motions for summary judgment. *See supra*, n. 8.

[14]The district court cases cited by United, Def.'s Mem. at 7; Def.'s Opp. and Reply at 16, are not contrary to this holding. In *Fitzgerald v. Lincare, Inc.*, No. 21-CV-412-TLS, 2021 WL 3408613, at *12 n.10 (N.D. Ind. Aug. 3, 2021), the court ultimately did not decide whether an FMLA request for leave was a reasonable accommodation request; in *Arms v. Milwaukee Cty.*, No. 18-CV-1835, 2019 WL 1981036, at *5 (E.D. Wis. May 1, 2019), the court pointed out that the Seventh Circuit had not decided the question and instead cited a Fifth Circuit decision for its holding; in *Kalahar v. Priority, Inc.*, No. 20-C-0055, 2021 WL 363983, at *8–9 (E.D. Wis. Feb. 3, 2021), the court held that the employee's FMLA request was not a reasonable accommodation because the employee could not perform the essential functions of her job while using intermittent leave; and in *Smith v. Cook Cnty.*, No. 17-C-7609, 2019 WL

for intermittent FMLA leave is a request for reasonable accommodation is thus a factual question (within certain limits). Here, Wier's request for 10 hours or one day off up to four times per month may qualify as a reasonable request for a modified work schedule to accommodate her disability. *See id.* A reasonable juror could find that, viewing the facts in the light most favorable to Wier, her request for leave put United on notice that she had a disability and was seeking an accommodation.

Weir also disputes that United approved all her requests for FMLA leave. On October 16, 2017, she submitted a new form signed by Dr. Gephart, requesting intermittent FMLA leave through February 2018.[15] Pl.'s Mot. and Opp. at 23. Wier received a termination letter dated the day after the Operations Department called Dr. Gephart's office and confirmed the authenticity of her last FMLA request. PSOF ¶¶ 50, 51. Viewing the facts in the light most favorable to Wier, a reasonable juror could find that United failed to engage, at that point, in the interactive process of accommodating her mental health condition as required by the ADA, *see, e.g. Brown v. Milwaukee Bd. of School Dirs.*, 855 F.3d 818, 821 (7th Cir. 2017), instead jumping to the decision to fire her. And as described above in connection with the FMLA interference and retaliation claims, there is a genuine dispute over whether United had legitimate reasons, unrelated to Wier's alleged disability, for firing her. United's

---

1515007, at *6 (N.D. Ill. Apr. 8, 2019), the court held that an "open-ended amount of leave beyond that required by the FMLA" was not a reasonable accommodation, without deciding the issue of whether an FMLA request is ever a request for accommodation, *id.* (cleaned up).

[15]Just as for the FMLA interference claim, Wier's argument that United's statement in the termination letter that her prior leave was "invalid" does not amount to a failure to reasonably accommodate her, because United approved and Wier took that leave.

motion for summary judgment on the ADA and IHRA accommodation claims is thus denied.

### D. ADA and IHRA Discrimination

To succeed on ADA and IHRA discrimination claims, a plaintiff must show that "(1) she is disabled; (2) she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by her disability." *Stelter v. Wis. Physicians Serv. Ins. Corp.*, 950 F.3d 488, 490 (7th Cir. 2020); *Tate v. Dart*, 51 F.4th 789, 793 (7th Cir. 2022) ("Illinois courts analyze IHRA claims under a framework that is practically indistinguishable from the ADA framework.").

As discussed earlier in this Opinion, there are two ways to prove discrimination. First, under the direct method, the plaintiff can meet her burden by presenting either direct or circumstantial evidence. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004); *Bekker v. Humana Health Plan, Inc.*, 229 F.3d 662, 670 (7th Cir. 2000). Direct evidence includes an admission by the decisionmaker that the employment decision was based on the prohibited animus. *Buie*, 366 F.3d at 503. More frequently, however, employees present circumstantial evidence to prove discrimination. *Id.* This may include evidence of "(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment" or "(4) evidence that the employer offered a pretextual reason for an adverse employment action." *Dickerson v. Bd. of Trustees of*

*Community College Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011) (citations omitted). Second, under the indirect method of proof, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), discrimination may be proven through a burden-shifting framework. Because Wier does not proceed with the burden-shifting framework of *McDonnell Douglas Corp.* to oppose summary judgment on her ADA discrimination claim, the Court does not consider United's arguments for summary judgment using that method of proof here.

On the first and second elements, neither party addresses whether Wier's dysthymic dysphoria diagnosis is a disability as defined by the ADA,[16] or whether Wier was qualified to perform the essential functions of her job with or without accommodation. So, for the purposes of this decision, the Court will assume that Wier is disabled and could perform her essential job functions. On the third element, whether United fired Weir because of her disability, the Court evaluates the same facts that are relevant to the interference, retaliation, and accommodation claims already discussed earlier. As explained above, there is a genuine dispute about United's reasons for firing Wier that must be decided by a jury rather than this Court. Viewing the evidence in the light most favorable to Weir—although it is a very close call—a reasonable juror could find that (1) the timing of Weir's firing after she provided a new certification from Dr. Gephart, (2) United's statements in the October 17 meeting, and (3) United's possibly pretextual explanation for its decision to fire her together

---

[16]A disability is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of the individual; (b) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102.

show that United fired her because of her disability and her request for time off. The motion for summary judgment on the ADA and IHRA discrimination claims is therefore denied.

### E. ADA and IHRA Retaliation

For the ADA and IHRA retaliation claims, the plaintiff must establish that "(1) she engaged in protected activity, (2) her employer took an adverse action against her, and (3) there was a but for causal connection between the two." *Parker v. Brooks Life Science, Inc.*, 39 F.4th 931, 936 (7th Cir. 2022) (cleaned up); *Bruno v. Wells-Armstrong*, 2024 WL 737300, at *4 (7th Cir. Feb. 23, 2024) (holding that an IHRA retaliation claim "rise[s] or fall[s]" with an ADA retaliation claim). Just as for an ADA discrimination claim, the causal connection may be established by direct or indirect evidence. But unlike a discrimination claim, "even those who are not qualified individuals can maintain a claim for retaliation." *Kotaska v. Fed. Express Corp.*, 966 F.3d 624, 632 (7th Cir. 2020) (citation omitted). The Court must "consider the evidence as a whole and ask whether a reasonable jury could draw an inference of retaliation." *King v. Ford Motor Co.*, 872 F.3d 833, 842 (7th Cir. 2017) (citation omitted).

United first argues that Wier did not engage in protected activity under the ADA. Def.'s Mem. at 13–14. To have engaged in an activity protected by the ADA, the employee "must have asserted [her] rights under the ADA by either seeking an accommodation or raising a claim of discrimination due to [her] disability." *Preddie*, 799 F.3d at 814–15 (citations omitted). Citing this standard, the Seventh Circuit has "assume[d] without deciding that taking FMLA leave constitutes a statutorily protected

activity under the ADA." *Trahanas v. Northwestern University*, 64 F.4th 842, 856 (7th Cir. 2023). And in *Freelain*, the Seventh Circuit held that an employee met the first requirement of an ADA retaliation claim and "engaged in statutorily protected activity by using his FMLA leave because of his medical ailments" under both the ADA and the FMLA. 888 F.3d 901. Considering these holdings, this Court concludes that by seeking out intermittent FMLA leave for her mental health condition, Wier engaged in statutorily protected activity under the ADA.

The parties next dispute whether Wier's request for intermittent leave was the cause of United's decision to terminate Wier, which is an adverse action. As the Court has already addressed earlier in this Opinion, when viewing the evidence in the light most favorable to Wier, a reasonable juror could infer that Wier's protected activity of requesting FMLA leave was the reason for her termination. United's motion for summary judgment on the ADA and IHRA retaliation claims is therefore denied.

### III. Conclusion

United's motion for summary judgment on all claims is denied. Wier's cross-motion for summary judgment on the FMLA interference claim is also denied. The parties shall start settlement negotiations and otherwise confer on the next step of the litigation (including the estimated length of the trial), and file a status report by April 17, 2024.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 28, 2024